# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **PERRY LEE CARTER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-18-215-RAW-SPS |
| ) | |
| **COMMISSIONER of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

The claimant Perry Lee Carter requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was sixty-four years old at the time of the most recent administrative hearing (Tr. 1672, 1850). He completed the twelfth grade and has worked as a heavy equipment operator and dump truck driver (Tr. 30, 209). The claimant alleges that he has been unable to work since an amended alleged onset date of May 7, 2013, due to diabetes, heart problems, and a bad back (Tr. 1675, 1881).

## Procedural History

On February 7, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Luke Liter held an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 16, 2015 (Tr. 1712-1724). However, the Appeals Council reversed the ALJ's decision and remanded for further analysis on June 23, 2017 (Tr. 1731-1732). On remand, ALJ Liter held a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated February 16, 2018 (Tr. 1627-1642). The Appeals Council then denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step two of the sequential evaluation. He found that from the claimant's amended onset date of May 7, 2013 to his date last insured of June 30,

2014, the claimant had the medically determinable impairments of obesity, diabetes mellitus, paroxysmal supraventricular tachycardia (PSVT), and hypertension (Tr. 1630). Finding that none of these impairments significantly limited the claimant's ability to perform basic work-related activities for 12 consecutive months, he found that the claimant did not have a severe impairment then concluded that the claimant was therefore not disabled (Tr. 1630-1642).

## Review

The claimant challenges the ALJ's step two findings, particularly alleging that the ALJ ignored a treating physician assessment in failing to find that the claimant had no severe impairment.  The undersigned Magistrate Judge agrees with the claimant's contention, and the decision should be reversed and remanded for further proceedings.

The relevant medical evidence reflects that the claimant presented to the hospital twice in May 2013, with complaints of palpitations.  On May 7, 2013, palpitations and PSVT were resolved, and attributed to the use of over-the-counter supplements (Tr. 2010-2011, 2015).  An echocardiogram on May 7, 2013 revealed normal left ventricular size with normal global left ventricular systolic function, as well as left atrial enlargement and Grade 1 diastolic dysfunction (Tr. 2012).  Dr. Robert Parris interpreted this as essentially excluding any significant structural heart disease but noting that he may be a candidate for antiarrythmic therapy and a possible ablation (Tr. 2015).  On May 13, 2013, the claimant again reported palpitations and was assessed with PSVT and discharged from the ER once he was stable (Tr. 2004).  An EKG conducted by Dr. Parris on October 31, 2013 was

normal, and the left ventricular ejection fraction was 45% (Tr. 2107). He continued to complain of intermittent palpitations even through June 9, 2014 (Tr. 2099, 2101).

The claimant was also treated for diabetes mellitus during this time, and his blood sugar was noted to be 300 on March 17, 2014 (Tr. 2034-2037).

On September 2, 2014, the claimant had an acute ST-elevation myocardial infarction and underwent cardiac catheterization with stenting of the left anterior descending artery and the diagonal branch (Tr. 2095, 2117-2119). In October 2014, the claimant was found to be in heart failure (Tr. 2092). On October 28, 2014, the claimant went into cardiopulmonary arrest due to coronary artery disease, and he was discharged as stable on November 7, 2014 (Tr. 2129).

On October 2, 2014, Dr. Parris completed a Cardiac RFC Questionnaire, which he indicated applied from May 7, 2013 through October 2, 2014, the date he completed the form. On this form, he indicated that the claimant was capable of low stress jobs, and that stress caused an elevation of his heart rate (Tr. 2083). Here, he indicated that the claimant could stand/walk about two hours in an eight-hour workday and sit six hours in an eight-hour workday, also needing a sit/stand option as well as the ability to take unscheduled breaks (Tr. 2084). He again indicated that the claimant could frequently lift less than ten pounds and up to ten pounds occasionally and that he could occasionally twist, crouch/squat, and climb ladders and stairs but rarely stoop or bend, and that he needed to avoid at least concentrated exposure to most hazards (Tr. 2085). When asked how many days per month the claimant would miss work, he indicated that was unknown (Tr. 2086).

On that same day, Dr. Parris completed a congestive heart failure assessment of the claimant, indicating that treatment began September 11, 2014 and was ongoing for congestive heart failure (Tr. 2077). He indicated that the claimant would be unable to perform routine and repetitive tasks at a consistent pace, detailed or complicated tasks, fast-paced tasks, and exposure to work hazards, and he indicated that the claimant could sit one hour at a time and stand thirty minutes at a time, and that he could sit and stand/walk less than two hours in an eight-hour workday (Tr. 2078). Additionally, he indicated that the claimant would need eight unscheduled breaks lasting ten minutes each, and that the claimant would need to elevate his legs 25% of the workday due to edema (Tr. 2078-2079). He stated the claimant could occasionally lift ten pounds and frequently less than ten pounds, and only occasionally twist but rarely stoop (Tr. 2079).

On October 14, 2014, the claimant's nurse practitioner Melinda Faye Scantling completed an RFC assessment and questionnaire regarding absences from work, in which she indicated that the claimant would be absent more than four days per month (Tr. 2121, 2125). She attributed this to multiple joint pain, congestive heart failure, diabetes, and shortness of breath (Tr. 2121). She further stated that he was incapable of even low stress jobs, and that he could sit and stand ten minutes each at one time and stand/walk less than two hours total during an eight-hour workday, and that he would need a sit/stand option as well as the ability to take unscheduled breaks (Tr. 2123-2124). She then indicated that he could only occasionally lift/carry less than ten pounds (Tr. 2124). She stated that the earliest these limitations applied was December 31, 2012 (Tr. 2126).

State reviewing physicians determined that the claimant's impairments were nonsevere (Tr. 1697-198, 1705-1706).

At the administrative hearing, Dr. Jack Lebeau testified as to the claimant's impairments, indicating that the claimant did not meet a Listing prior to June 2014, but classified the claimant's SVT, obesity, and diabetes as severe during the relevant time period (Tr. 1685-1690).

In his written opinion, the ALJ noted the claimant's medically-determinable impairments, then found that he did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months, and that he therefore did not have a severe impairment (Tr. 1630). Although it was a step two opinion, the ALJ summarized the evidence in the record, particularly Dr. Parris's opinions. He then accorded no weight to Dr. Parri's Cardiac RFC Questionnaire because it was completed after the claimant's heart attack in September 2014 and because the records were "essentially normal through the date last insured" (Tr. 1637-1638). He did not address Nurse Practitioner Scantling's assessment, although he did address opinions by a treating physician and physical therapist who treated and assessed the claimant after his date last insured (Tr. 1638). The ALJ gave no weight to Dr. Lebeau's assessment, asserting that he "appeared unfamiliar with the claimant's file at the hearing," and further discounting his RFC assessment because he did not indicate the claimant had any severe "orthopedic" impairments (Tr. 1639). He also found that the claimant appeared to be taking his diabetes medications through his date last insured and thus it was not a severe impairment (Tr. 1640).

The claimant argues that the ALJ erred at step two of the sequential analysis by failing to find his PSVT and obesity were severe impairments.  A claimant has the burden of proof at step two to show that he has an impairment severe enough to interfere with the ability to work.  *Bowen v. Yuckert*, 482 U.S. 137, 146-147 (1987).  This determination "is based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), *quoting Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  Although a claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the burden at step two is a *de minimus* showing of impairment.  *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997), *citing Williams*, 844 F.2d at 751.  A finding of non-severity may be made only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have any more than a minimal effect on an individual's ability to work.  *Hinkle*, 132 F.3d at 1352.

In this case, the claimant was treated a number of times for his palpitations and shortness of breath, and the record further reflects that the claimant's diagnosed diabetes mellitus was not always under control.  The record further reflects that these impairments also limited what the claimant could do, and the undersigned Magistrate Judge notes that impairments are not required to be "orthopedic" in order to affect a claimant's ability to sit, stand, walk, lift, and carry.  The undersigned Magistrate Judge is therefore satisfied that this evidence meets the claimant's *de minimus* burden of showing a severe impairment at step two, noting that the standards for evaluation at step two and step four are significantly

different and should not be conflated. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("The evidence . . . showed that she . . . had a consultation with a rheumatologist, Dr. Booth, for purposes of evaluating arthritis. He found that she had some osteoarthritis of the knees. He noted pain in her other joints but could not definitively assign an etiology to the pain at that time. Thus, under a *de minimus* standard, the ALJ's finding that arthritis was not a medically determinable impairment appears to be unsupported by substantial evidence.") [citations omitted].

Because the claimant met his burden of showing multiple severe impairments at step two, the decision of the Commissioner should be reversed and the case remanded for further analysis. Upon remand, the ALJ should evaluate the claimant's impairments, singly and in combination.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of September,

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**